Courtney Abrams (Cal. Bar No. 265742)
courtney@courtneyabramslaw.com
*Courtney Abrams, PC*
2711 Sepulveda Blvd., No. 625
Manhattan Beach, CA 90266
(310) 601-4448 (T)

Monica H. Beck (*pro hac vice to be filed*)
mbeck@tfnlgroup.com
Chloe M. Neely (*pro hac vice to be filed*)
cneely@tfnlgroup.com
***The Fierberg National Law Group***
161 East Front Street, Suite 200
Traverse City, MI 49684
(231) 933-0180 (T)
(231) 252-8100 (F)

*Attorneys for Plaintiff Jane Doe*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE<br><br>               Plaintiff,<br><br>vs.<br><br>CHRISTOPHER D'ELIA<br><br>               Defendant. | Case No:  2:21-cv-1918<br><br>**COMPLAINT FOR VIOLATION OF FEDERAL CHILD SEXUAL EXPLOITATION AND CHILD PORNOGRAPHY LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jane Doe, through her attorneys, brings this action against Defendant Christopher D'Elia for violation of federal child sexual exploitation and child pornography statutes 18 U.S.C. § 2251 *et seq.*

## NATURE OF THE ACTION

1.      This lawsuit seeks damages arising out of the Defendant's violations of federal child pornography statutes, 18 U.S.C. § 2251, § 2252, and § 2252A.

2.      Ms. Doe brings this suit pursuant to the civil remedy provisions of 18 U.S.C. § 2252A(f) and § 2255(a).  Section 2252A(f) provides a civil remedy for victims who are aggrieved by a violation of § 2252A.  Section 2255(a) allows victims of certain enumerated federal law violations, including § 2251, § 2252, and § 2252A, who suffer personal injury as a result of the violation to recover actual damages or liquidated damages in the amount of $150,000, whichever is greater.  A court may also award punitive damages, equitable relief, and attorneys' fees and costs to plaintiffs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States, specifically 18 U.S.C. § 2252A(f) and § 2255.

4.      Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and 18 U.S.C. § 2255(c)(1) because it is the judicial district where the sole Defendant resides.

## PARTIES

5.      At all relevant times, Plaintiff Jane Doe was a minor.  Ms. Doe is now 24 years old.  Given the sensitive nature of the allegations, Ms. Doe seeks to protect her privacy and identity and files her Motion to Proceed Under Pseudonym contemporaneously with this Complaint.

6.      Defendant Christopher William D'Elia is, upon information and belief, a citizen of Los Angeles County, California.

7.      Upon information and belief, Defendant D'Elia was born in 1980, and at all relevant times was approximately 34 years old.

## FACTUAL BACKGROUND

### *Defendant D'Elia Knowingly Exploited & Solicited Child Pornographic Images of Ms. Doe when She Was 17-Years Old*

8.      On Friday, February 19, 2021, Defendant D'Elia publicly released a video statement confronting the deluge of sexual misconduct allegations against him.  He stated, "I do know how it looks . . . I know it looks bad."  He insisted: "It doesn't show the full scope of what happened."  In that regard, Defendant D'Elia is correct.  While he has taken time away from the limelight because "[s]ex controlled [his] life" and "it was [his] focus all the time," Ms. Doe has grappled with the lasting ramifications of Defendant D'Elia's self-admitted "problem."  But compared to Defendant D'Elia, who claims "this was always about sex" to him, it was much more to Ms. Doe.  It was about child pornography and child sexual exploitation. And Ms. Doe was the child.

9.      In late 2014, Ms. Doe was a 17-year-old high school student and she, like many young women, communicated with Defendant D'Elia over social media. Defendant D'Elia, true to his predatory pattern, soon invited Ms. Doe to one of his comedy shows and secluded her in his hotel room where he degraded her by, among other things, ejaculating on her face.  After that, Defendant D'Elia—then a 34-year-old man who knew that Ms. Doe was 17, still in high school, and had been a virgin prior to meeting him—exploited his own fame and status and Ms. Doe's youth and

inexperience.  He constructed a manipulative, controlling, and abusive dynamic in which he demanded Ms. Doe provide him sexually explicit images of herself over the internet, directed her what specific sexual poses and acts she should perform for him, and psychologically punished her when she refused.  Ultimately, over the course of four months, Defendant D'Elia solicited and received scores of sexually explicit photos and videos of Ms. Doe when she was a minor—including images of her "fingering" her vagina, simulating oral sex, and of her fully exposed genitalia—all in violation of federal child pornography and sexual exploitation laws.

### Defendant D'Elia's Stand-Up Comedy & Acting Career

10.     Defendant D'Elia is a stand-up comedian and actor, known for his roles in the television shows *Whitney* and *Undateable* on NBC, *The Good Doctor* on ABC, and *You* on Netflix.  Defendant has appeared in a number of other television shows and films.

11.     Defendant has performed stand-up comedy since approximately 2006 and has been featured on Comedy Central and Showtime.  He was named one of Variety's "10 Comics to Watch" in 2011.  Defendant D'Elia appeared in his first one-hour stand-up comedy special in 2013 on Comedy Central and has since had three additional specials, all on Netflix.  Defendant has also performed on several nationwide stand-up comedy tours.

12.     Defendant D'Elia maintains a strong presence on social media.  He has approximately 2.1 million followers on Instagram, two million followers on Vine, one million followers on Twitter, and over half a million followers on Facebook.

13.     Defendant has also become well-known for using Snapchat to promote his comedy.  Through the Snapchat application, users can send photographs, videos,

or messages—all referred to as "snaps"—to individual recipients.  Snaps are only available to view for a short time before they disappear.  The application also has a feature for users to share "Stories" that are available for either a user's "friends" or the general public to view.  Each "Story" is available for a 24-hour period.  Although the key feature of Snapchat is that photos, videos, and messages "disappear" after they have been viewed, it is possible to save Snapchat photos, videos, and messages, for example by taking a screenshot of the image.

### *Defendant D'Elia's 2014 "Under No Influence" Tour*

14.     Defendant D'Elia began his "Under No Influence" Tour in September 2014, during which time he was scheduled to perform stand-up comedy in more than 30 cities in the United States and Canada.  The tour began on September 18, 2014, and was scheduled to end with a final show in Las Vegas on December 27, 2014.

15.     Defendant D'Elia's tour included shows in Westbury, New York (September 18), Atlantic City (September 19), Washington, D.C. (September 20), Albany (September 25), Toronto (September 26–27), Columbus (October 2), Royal Oak, Michigan (October 3), Indianapolis (October 4), Chicago (October 9), Kansas City (October 10), St. Louis (October 11), Milwaukee (October 16), Madison (October 17), Minneapolis (October 18), Orlando (October 22), West Palm Beach (October 23), Miami (October 24), Tampa (October 25), Boston (November 6), Mashantucket, Connecticut (November 7), New York (November 8), Seattle (November 14), Portland (November 15), Eugene, Oregon (November 16), New Orleans (November 20), Austin (November 21), Dallas (November 22), Durham,

North Carolina (December 5), Atlanta (December 6), San Francisco (December 11), Los Angeles (December 13), and Las Vegas (December 27).

### *Ms. Doe First Contacted Defendant D'Elia on Social Media*

16.     In 2014, Ms. Doe was 17 years old.

17.     On or about September 30, 2014, Ms. Doe first contacted Defendant D'Elia via Instagram.  She sent him a photograph of herself via "direct message"—a message that she sent privately to Defendant D'Elia.

18.     The photo showed a young Ms. Doe, holding a giant teddy bear and laughing.

19.     Ms. Doe and her friend had been watching the television show *Workaholics* and had seen Defendant D'Elia in an episode.

20.     Ms. Doe and her friends sent the photo to Defendant D'Elia as a joke; they assumed he would not answer because of his celebrity status.

21.     Defendant D'Elia responded to Ms. Doe's direct message right away, asking her to come to one of his comedy shows.

22.     Ms. Doe responded, telling Defendant D'Elia she would probably make it to one of his shows in November, in Connecticut.

23.     Defendant D'Elia was scheduled to perform a show in Mashantucket, Connecticut on November 7, 2014, at the Fox Theater at Foxwoods Resort Casino as part of his "Under No Influence" comedy tour.

24.     The day after Ms. Doe first messaged Defendant, he asked her if she had a Snapchat account.

25.     Ms. Doe did not answer Defendant's question for a while because she was not sure if she should.

26.     When Ms. Doe did not answer Defendant D'Elia right away, he sent her another message with his Snapchat account information.

27.     Ms. Doe added Defendant D'Elia as a "friend" on Snapchat later that day.

### Defendant D'Elia Continued to Communicate with Ms. Doe via Social Media & Began to Solicit Child Pornography Images from Ms. Doe via Snapchat & Email

28.     As soon as Ms. Doe added Defendant D'Elia on Snapchat, he started sending her messages.  He sent her a picture message immediately, and Ms. Doe responded.

29.     Defendant asked Ms. Doe again about coming to his comedy show.

30.     Defendant also asked Ms. Doe to show him more of herself.

31.     Defendant D'Elia asked Ms. Doe to keep sending him pictures, each time asking to see more of her.

32.     Defendant first asked Ms. Doe to send him a photo showing her whole body, and then asked Ms. Doe to send him a photo of herself undressed.

33.     Defendant D'Elia's messages to Ms. Doe became sexual very quickly. The same night they first started exchanging messages, Defendant D'Elia asked Ms. Doe to send him nude pictures of herself.

34.     Ms. Doe felt uncomfortable with Defendant D'Elia's request, so she ignored his request and repeatedly tried to change the subject.

35.     Defendant D'Elia persisted and continued asking Ms. Doe for nude photos of herself.

36.     For approximately the next month, Ms. Doe and Defendant exchanged messages every day.

37.     During that time, Defendant asked Ms. Doe for pictures of herself occasionally.

38.     Defendant D'Elia and Ms. Doe communicated primarily via Snapchat and email.  After the first few times Ms. Doe sent him photos of herself, Defendant D'Elia asked her to send him photos or videos of herself by email.

39.     Over time, Defendant D'Elia became more insistent in his requests for photos of Ms. Doe, including by urging her to send him photos at specific times and soliciting specific kinds of photos from Ms. Doe.

40.     On October 6, 2014, Defendant commented, "HAHA," on a photograph of Ms. Doe's father that Ms. Doe posted on her Instagram account and commented.

41.     On October 19, 2014, Defendant "liked" a photograph of Ms. Doe that she posted on her Instagram account.  The photograph, captioned "Selfie Sunday still a thing?" showed a fresh-faced Ms. Doe.

42.     On October 23, 2014, Ms. Doe posted a photo of herself and a friend from her high school's "Spirit Day."  The photo showed her and another person dressed up in red, white, and blue, in the hallway of her high school.  Ms. Doe had her hand over her heart and the caption read, "Could we get more patriotic?"  In the background were other students walking in the hallway, several of whom were similarly dressed up for Spirit Day.  Defendant D'Elia commented on the photo, "Haha wtf."  Ms. Doe's friends commented, expressing surprise and asking Ms. Doe how she knew Defendant D'Elia.  Defendant D'Elia commented a second time, "[@Ms. Doe] haha I'm not hating! So funny everyone tripping out on the comments too."  Ms. Doe responded to Defendant, "@chrisdelia haha look what you've done."

43.     During their interactions, Defendant D'Elia was pleasant and showed interest in Ms. Doe.

44.     At times, however, Defendant D'Elia was pushy or aggressive when Ms. Doe communicated with him.

45.     For example, Ms. Doe avoided sending Defendant D'Elia photos of herself several times because she was uncomfortable, was with her family, or was at school.  Defendant D'Elia continued to insist that Ms. Doe send him the photos he had requested and would not talk about anything else until she complied with his demands.

46.     Ms. Doe sent Defendant D'Elia approximately 5–10 sexually explicit photos and videos of herself before she met him in person.  Ms. Doe was only 17 years old at the time.

### ***Defendant D'Elia & Ms. Doe Met in Person & Had Sex***

47.     Over time, Defendant D'Elia became increasingly insistent that Ms. Doe meet him in person.

48.     For example, after Ms. Doe initially told Defendant D'Elia that she would attend his show, she had second thoughts and told Defendant D'Elia that she may not be able to make it to his show.  In response, Defendant D'Elia guilted Ms. Doe by telling her how much he wanted to see her and how special it would be if she came to his show.

49.     The night before Defendant D'Elia's show in Connecticut, Ms. Doe and Defendant D'Elia exchanged phone numbers at Ms. Doe's suggestion. Defendant D'Elia gave Ms. Doe a phone number she later learned was a fake phone number associated with a text messaging application.

50.     On November 7, 2014, Ms. Doe and two of her friends drove from their hometown to the Foxwoods Resort Casino in Mashantucket, Connecticut, where Defendant D'Elia was performing that night.

51.     Ms. Doe told Defendant D'Elia what time she was planning to arrive at his show.  In response, Defendant D'Elia insisted Ms. Doe needed to arrive earlier so they could "hang out" before the show.

52.     When she did not immediately agree, Defendant D'Elia continued to pressure Ms. Doe to arrive at the venue early enough to see him before the show started.

53.     When Ms. Doe arrived at the Foxwoods Resort Casino, Defendant D'Elia asked Ms. Doe via text message to come up to his hotel room at the Casino before his show.

54.     Defendant D'Elia told Ms. Doe via text message what floor his room was on, but he did not tell her his specific room number.

55.      Ms. Doe was very nervous about going to Defendant D'Elia's hotel room, especially because he was so vague about which room he was in, so she brought one of her friends with her.

56.     When Ms. Doe and her friend got off the elevator on Defendant D'Elia's floor, they stood in the hallway outside the elevator and Ms. Doe sent Defendant D'Elia a text message letting him know that she was there.

57.     Defendant D'Elia responded with a text message telling Ms. Doe that her friend needed to leave or he would not open the door to his hotel room.

58.     Ms. Doe's friend reluctantly went back to the elevator.

59.     After Ms. Doe's friend left, Defendant D'Elia opened the door to his hotel room, which was located in the corner of the hallway with a direct view of the elevator.  Ms. Doe understood that Defendant D'Elia had been watching her and her friend through the peephole in his hotel room door.

60.     Ms. Doe went into Defendant D'Elia's hotel room.

61.     Defendant D'Elia made small talk with Ms. Doe briefly, asking her how the drive had been and a few other questions.

62.     The television in Defendant D'Elia's hotel room was on, and Defendant D'Elia told Ms. Doe to have a seat on the couch.

63.     Ms. Doe sat down on the couch, and Defendant D'Elia sat next to her.

64.     Shortly after they sat down on the couch, and approximately two to three minutes after Ms. Doe had entered Defendant D'Elia's hotel room, Defendant D'Elia grabbed Ms. Doe's hand, put it on his already erect penis, and started moving her hand to pleasure himself.

65.     Defendant D'Elia then instructed Ms. Doe to get on the floor, take off his shoes and pants, and give him oral sex.

66.     Defendant D'Elia continued to tell Ms. Doe what to do and told her she was a "good girl" when she did what he said.

67.     Defendant D'Elia did not touch Ms. Doe, except to show her what he wanted her to do to him.

68.     Defendant D'Elia then made Ms. Doe undress herself while he watched, and told Ms. Doe to go lay on the bed.

69.     Defendant D'Elia and Ms. Doe never kissed.

70.     Approximately ten minutes after she arrived at his hotel room, Defendant D'Elia had sex with Ms. Doe.

71.     During sex, Defendant D'Elia asked Ms. Doe several times to tell him how old she was.  <u>She told him she was 17-years-old</u>, and he responded that the fact that Ms. Doe was only 17—a minor—was "hot."

72.     During sex, Defendant D'Elia asked Ms. Doe if she was still in <u>high school</u>.  She said "yes," and Defendant D'Elia responded that the fact that Ms. Doe was in high school was "hot."

73.     Defendant D'Elia asked Ms. Doe several times to tell him what grade she was in while they had sex, and she told him she was still in high school.

74.     Defendant D'Elia forced Ms. Doe to look in his eyes while they had sex.  Every time she tried to close her eyes or look away, Defendant D'Elia demanded that Ms. Doe look at him.  At one point, Ms. Doe looked away and Defendant D'Elia grabbed her face and made her look at him.

75.     Ms. Doe was a virgin when she met Defendant D'Elia.  Several times during sex, Defendant D'Elia asked her if she was a virgin, and she told him "no," because she did not want him to have that information about her.

76.     Defendant D'Elia asked Ms. Doe several more times if she was a virgin.  When she told him "no," Defendant D'Elia asked Ms. Doe how many people she had previously had sex with.

77.     In fact, Ms. Doe's encounter with Defendant D'Elia was her first sexual experience of any kind—she had not even kissed anyone before she met him.

78.     After they finished having sex, Defendant D'Elia asked Ms. Doe about college.  He also commented that Ms. Doe had bled on his bed.

79.     Defendant D'Elia told Ms. Doe that she needed to come back up to his hotel room after his show.

80.     Approximately 30 minutes after she arrived at Defendant D'Elia's hotel room, Ms. Doe left to attend Defendant D'Elia's show.

81.     Ms. Doe returned to Defendant D'Elia's hotel room after the show because she was confused about their first encounter.  Although she felt like something was wrong, she had never had sex before that night and could not identify what she was feeling.

82.     When Ms. Doe returned to Defendant D'Elia's hotel room after the show, he told her to give him oral sex.

83.     Defendant D'Elia asked Ms. Doe how she and her friends liked his show, and how big of fans they all were.

84.     Defendant D'Elia also asked Ms. Doe if her friends were in high school too, but otherwise did not make conversation with Ms. Doe.

85.     After she gave him oral sex, Defendant D'Elia had sex with Ms. Doe again.  At the end, Defendant D'Elia made Ms. Doe sit on the floor while he ejaculated on her face.

86.     At the end of the night, Ms. Doe left Defendant D'Elia's hotel room feeling disgusting and defeated.

### *Defendant D'Elia Continued to Manipulate Ms. Doe to Solicit Child Pornography Images & Videos from Her*

87.     The next day, Defendant D'Elia "unfollowed" Ms. Doe on Instagram.

88.     Ms. Doe sent Defendant D'Elia a text message, but he did not respond.

89.     Three days later, Ms. Doe asked Defendant D'Elia via Snapchat if she had done something wrong to make him unfollow her on Instagram.

90.     Defendant D'Elia replied, telling Ms. Doe that he did not ever want to hear her say "no" to him, and that the last girl who said "no" to him did not hear from him for six months.  Defendant D'Elia asked Ms. Doe, "you don't want that do you?"

91.     At the time, Ms. Doe did not understand what Defendant D'Elia was referring to when he told her he did not want to hear her say "no."

92.     After that, Ms. Doe and Defendant D'Elia communicated exclusively by Snapchat and email.

93.     Defendant D'Elia told Ms. Doe to send him sexually explicit photos or videos within a certain timeframe and, if she did not, he unfollowed her on social media.

94.     Defendant D'Elia would then re-follow Ms. Doe only if she complied with his requests and sent him a new photo or video.

95.     The pattern of unfollowing and re-following happened approximately four times.

96.     Ms. Doe complied with Defendant D'Elia's requests to send him sexually explicit photos and/or videos because she felt convinced that he liked her and was interested in her life.

97.     Over the course of six or seven months, Ms. Doe sent Defendant D'Elia more than 100 sexually explicit photos and videos.

98.     Of those photos and videos, approximately half of them were while Ms. Doe was a minor.

99.     During their conversations, Defendant D'Elia told Ms. Doe how she ranked among the other girls and women he had talked to or had sex with.

100.    Defendant D'Elia told Ms. Doe not to have sex with anyone else because he wanted her to have sex with him only.

101.    As Ms. Doe later learned, Defendant D'Elia's directive apparently included the caveat that he could—and did—demand she have sex with boys her own age, but under the condition that she would send him videos of herself doing so.

102.    If Ms. Doe did not do what Defendant D'Elia asked her to, he would respond to her with degrading comments.

103.    For example, Defendant D'Elia told Ms. Doe that she moved "down in rank" to his "number three girl."  Defendant D'Elia told Ms. Doe that his "number one girl" was in New York and did anything he asked her to do, as soon as he asked. Defendant D'Elia compared Ms. Doe to other women and girls and attacked her self-confidence.

104.    Defendant D'Elia threatened to block Ms. Doe if she did not do what he told her to, and warned her that she would never hear from him again.

105.    By contrast, when Ms. Doe complied with Defendant D'Elia's demands, he treated her like she was the best person in the world.

106.    Defendant D'Elia continued to ask Ms. Doe for more pictures and videos of increasingly graphic and sexually explicit things.

107.    For example, Defendant D'Elia asked Ms. Doe to send him a video of her touching herself sexually, while she was in class at her high school.

108.   Defendant D'Elia asked Ms. Doe several times to make and send pornographic videos to him of herself having sex with boys her age.

109.   About a month after she met him in person, Defendant D'Elia told Ms. Doe that he wanted her to video-record herself giving a boy her age oral sex.  Ms. Doe did not want to do what Defendant D'Elia asked, but he continued to pressure her extensively for several months.  Ms. Doe felt so much pressure to comply with Defendant D'Elia's demand that she and a female friend—who was also 17 at the time—made a video where they pretended to do what Defendant D'Elia asked.

110.   Defendant D'Elia insisted Ms. Doe send him videos of her "fingering" herself, which she did.

111.   Defendant D'Elia told Ms. Doe that he wanted to have anal sex with her, and demanded she send him pictures of her buttocks, which she did.

112.   Defendant D'Elia asked Ms. Doe to send him photos and videos of herself putting her fingers in her mouth in a sexual manner.  He asked her to put her fingers in her mouth so many times that she almost threw up.

113.   Defendant D'Elia asked Ms. Doe multiple times if she had any friends who would like to meet him or his friends.

114.   Defendant D'Elia repeatedly asked Ms. Doe to meet up with and have sex with some of his friends.  At one point, Defendant D'Elia sent Ms. Doe a photo via Snapchat of him and the friend he wanted Ms. Doe to meet.  The friends Defendant D'Elia wanted Ms. Doe to meet included several other stand-up comedians: Bryan Callen, Jason Collings, and Michael Lenoci.

115.   In January 2015, Ms. Doe told Defendant D'Elia that she had been a virgin when they met.  He responded, "I know, I wish you had told me that, it would have made it so much hotter."

116.   Ms. Doe also reinforced to Defendant D'Elia that she was 17, and Defendant D'Elia responded, "I know."

117.   Ms. Doe told Defendant D'Elia these two things because she thought it might make him realize how young and inexperienced she was, and he would be nicer to her.

### *Ms. Doe Stopped Communicating with Defendant D'Elia*

118.   On January 31, 2015, Ms. Doe turned 18.

119.   Defendant D'Elia and Ms. Doe continued interacting until May 2015, when Ms. Doe began a relationship with a peer.

120.   During that time, Defendant D'Elia continued to use the same "hot and cold" tactics to manipulate Ms. Doe to send him sexually explicit photos and videos of herself.

121.   Defendant D'Elia asked Ms. Doe to send him videos of herself having sex with her boyfriend, or tell her boyfriend certain things and then send Defendant D'Elia screenshots of it.

122.   Ms. Doe never sent Defendant D'Elia any videos of her with her boyfriend.

123.   When Defendant D'Elia asked Ms. Doe to tell her boyfriend via text message that she was a "dirty slut" who wanted him to do specific sexual things to her, Ms. Doe faked the text messages by sending them to her own phone number and then sending Defendant D'Elia a screenshot of the messages.

124.   Defendant D'Elia continued to send messages to Ms. Doe.

125.   Ms. Doe never sent him any sexually explicit photos or videos after June or July 2015.

126.   Even after she ceased sending Defendant D'Elia explicit photographs and videos, Ms. Doe continued to feel an obligation to make Defendant D'Elia happy.

127.   Defendant D'Elia continued to send Ms. Doe messages and asked her repeatedly to meet with him during her first year in college.

128.   Ms. Doe never met with Defendant D'Elia again.

129.   Ms. Doe blocked Defendant D'Elia on Snapchat in July 2015, and again in October 2015.

130.   Both times Ms. Doe blocked Defendant D'Elia because she knew their dynamic was unhealthy.

131.   Each time, Defendant D'Elia emailed Ms. Doe and asked her where she went, and why she did not do what he had asked her to do.

132.   Each time, Ms. Doe felt guilty and added Defendant D'Elia back.

133.   In October or November 2015, Defendant D'Elia requested Ms. Doe as a "friend" on Facebook using his personal Facebook account, as opposed to his professional Facebook account.  Ms. Doe accepted his request.

134.   Ms. Doe rarely communicated with Defendant D'Elia after 2015.  She eventually blocked him on Snapchat for good in 2017 when he messaged her repeatedly asking her to come to a show he was performing in West Virginia.

135.   The last communication Ms. Doe received from Defendant D'Elia were Snapchat messages and emails asking her to come see him in West Virginia.

136.   The last communication Ms. Doe sent to Defendant D'Elia was in 2019.

137.   Ms. Doe saw Defendant D'Elia in the second season of the television series *You*, on Netflix.

138.   In the show, Defendant D'Elia portrayed a well-known stand-up comedian who preyed on underage girls.

139.   Defendant D'Elia's performance in the show deeply disturbed Ms. Doe because the character he played depicted how Defendant D'Elia had acted toward Ms. Doe in real life.  Ms. Doe suffered terrible anxiety thinking about what Defendant D'Elia had done to her.

140.    After seeing Defendant D'Elia in *You*, Ms. Doe sent him a final email expressing that she had been too young for what he had done to her and that she would never be in touch with him again.

### *Ms. Doe Suffered Personal Injury* <br> ***As a Result of Defendant D'Elia's Predatory Behavior***

141.   Ms. Doe suffered significant emotional, physical, and psychological harm as a direct result of Defendant D'Elia's predatory conduct.

142.   Ms. Doe's injury and harm have persisted from the time she first communicated with and met Defendant D'Elia to this day.

### COUNT I <br> 18 U.S.C. § 2252A

143.   Plaintiff incorporates all preceding paragraphs by reference, as though fully stated herein.

144.   Defendant knowingly received, solicited, possessed, and accessed with intent to view sexually explicit images and videos of Ms. Doe over the internet.

145.   Defendant took these actions knowing that Ms. Doe was only 17 years old.

146.   As Defendant knew, the images and videos were of Ms. Doe as a 17-year-old minor and depicted, among other things, simulated sexual intercourse, masturbation, and lascivious exhibition of Ms. Doe's genitalia and pubic areas.

147.   These images and videos were visual depictions of Ms. Doe engaging in sexually explicit conduct as defined by federal child pornography laws.  18 U.S.C. § 2256(2), (8).

148.   The images constituted child pornography as defined by federal child pornography laws.

149.   Title 18 U.S.C. § 2252A(f) creates a civil remedy for any person aggrieved by reason of the conduct prohibited under § 2252A(a).

150.   Defendant violated 18 U.S.C. § 2252A by:

a.   knowingly mailing, transporting, or shipping using any means of interstate commerce and/or in or affecting interstate commerce by any means, including by computer, any child pornography, in violation of 18 U.S.C. § 2252A(a)(1);

b.   knowingly receiving child pornography and/or material that contained child pornography, using a means of interstate commerce and/or that had been mailed, shipped, or transported in or affecting interstate commerce by any means, including by computer, in violation of 18 U.S.C. § 2252A(a)(2);

c.    knowingly soliciting through the mails, or using any means of interstate commerce and/or in or affecting interstate commerce by any means, including by computer, material in a manner that reflects the belief, or that is intended to cause another to believe, that the material is or contains an obscene visual depiction of a minor engaging in sexually explicit conduct, or a visual depiction of an actual minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252A(a)(3); and/or

d.    knowingly possessing, or knowingly accessing with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means of interstate commerce and/or in or affecting interstate commerce by any means, including by computer, or that was produced using materials that have been mailed, shipped or transported in or affecting interstate commerce by any means, including by computer, in violation of 18 U.S.C. § 2252A(a)(5).

151.   There are no affirmative defenses available for any of Defendant's conduct in violation of § 2252A(a)(1), (2), or (5) because Ms. Doe was a minor during all relevant times.

152.   There is no affirmative defense available for any of Defendant's conduct in violation of § 2252A(a)(5) because Defendant did not possess less than three images of child pornography and made no attempt—promptly, in good faith, or otherwise—to take reasonable steps to destroy the images or report the matter to law enforcement.

153.   Ms. Doe was aggrieved by reason of Defendant's conduct in violation of § 2252A.

154.   Ms. Doe seeks all available relief, including:

      a.     compensatory and punitive damages;

      b.     temporary, preliminary, or permanent injunctive relief;

      c.     the costs of this civil action and reasonable fees for attorneys and expert witnesses; and

      d.     any other appropriate or further relief as this Court deems just and proper.

## COUNT II
## 18 U.S.C. § 2255

155.   Plaintiff incorporates all preceding paragraphs by reference, as though fully stated herein.

156.   Title 18 U.S.C. § 2255(a) creates a civil remedy for any person who is a victim of a violation of any one of several child sexual exploitation and child pornography statutes and suffered a personal injury as a result.

157.   Defendant knowingly solicited, promoted, viewed, possessed, received, and/or transported sexually explicit images and videos of Ms. Doe that had been sent to him via the internet.

158.   Defendant used, persuaded, induced, and/or enticed Ms. Doe to send him photos and videos that included the lascivious exhibition of her genitalia and pubic areas and included images of herself engaging in sexually explicit conduct including touching herself sexually and simulating sexual intercourse.

COMPLAINT

159.   Defendant intended for Ms. Doe to engage in the sexually explicit conduct he requested her to photograph or video-record.

160.   Defendant knew the photos and videos he solicited from Ms. Doe were being sent via the internet.

161.   Defendant took these actions knowing that Ms. Doe was only 17 years old.

162.   Ms. Doe sent the images and videos, at Defendant's request.

163.   The images and videos were of Ms. Doe as a 17-year-old minor and were visual depictions of Ms. Doe engaging in sexually explicit conduct as defined by federal child pornography laws.  18 U.S.C. § 2256(2), (8).

164.   The images and videos showed, *inter alia*, Ms. Doe naked and Ms. Doe touching herself in sexually explicit ways.

165.   Defendant violated 18 U.S.C. § 2251 by:

a.   using, persuading, inducing, and/or enticing Ms. Doe, a minor, to engage in, with the intent that she engage in, sexually explicit conduct for the purpose of producing a visual depiction of such conduct and/or for the purpose of transmitting a live visual depiction of such conduct, knowing or having reason to know that such visual depiction would be transported or transmitted using any means of interstate commerce and/or in or affecting interstate commerce or mailed, if that visual depiction was produced or transmitted using materials that had been mailed, shipped, or transported in or affecting interstate commerce by any means, including by computer, or if such visual depiction had actually been transported or transmitted using any

means of interstate commerce and/or in or affecting interstate commerce or mailed, in violation of 18 U.S.C. § 2251(a).

166.   Defendant violated 18 U.S.C. § 2252 by:

a.   knowingly transporting or shipping using any means of interstate commerce and/or in or affecting interstate commerce by any means including by computer or mails visual depictions produced involving the use of a minor engaged in sexually explicit conduct, and depicting such conduct, in violation of 18 U.S.C. § 2252(a)(1);

b.   knowingly receiving visual depictions producing involving the use of a minor engaged in sexually explicit conduct and depicting that conduct using any means of interstate commerce or that had been mailed, or had been shipped or transported in or affecting interstate commerce, or which contained materials which had been mailed or so shipped or transported, by any means including by computer, in violation of 18 U.S.C. § 2252(a)(2); and/or

c.   knowingly possessing, or possessing with intent to view, 1 or more films, videotapes, or other matter containing visual depictions produced involving the use of a minor engaging in sexually explicit conduct and depicting that conduct, that had been mailed, or had been shipped or transported using any means of interstate commerce and/or in or affecting interstate commerce, or which had been produced using materials which had been mailed or so shipped or transported, by any means including by computer, in violation of 18 U.S.C. § 2252(a)(4).

167.   There is no affirmative defense available for any of Defendant's conduct in violation of § 2252, including violation of § 2252 (a)(4) because Defendant did not possess less than three matters containing visual depictions produced involving the use of a minor engaging in sexually explicit conduct and depicting that conduct, and made no attempt—promptly, in good faith, or otherwise—to take reasonable steps to destroy the visual depictions or report the matter to law enforcement.

168.   Defendant violated 18 U.S.C. § 2252A by:

a.   knowingly receiving child pornography using a means of interstate commerce and/or that had been shipped or transported in or affecting interstate commerce by any means including by computer, in violation of 18 U.S.C. § 2252A(a)(2);

b.   knowingly soliciting through the mails, or using any means of interstate commerce and/or in or affecting interstate commerce by any means, including by computer, material in a manner that reflects the belief, or that is intended to cause another to believe, that the material is or contains an obscene visual depiction of a minor engaging in sexually explicit conduct, or a visual depiction of an actual minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252A(a)(3); and/or

c.   knowingly possessing, or knowingly accessing with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means of interstate commerce and/or in or affecting interstate commerce by any means, including by

computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate commerce by any means, including by computer, in violation of 18 U.S.C. § 2252A(a)(5).

169.   There are no affirmative defenses available for any of Defendant's conduct in violation of § 2252A(a)(1), (2), or (5) because Ms. Doe was a minor during all relevant times.

170.   There is no affirmative defense available for any of Defendant's conduct in violation of § 2252A(a)(5) because Defendant did not possess less than three images of child pornography and made no attempt—promptly, in good faith, or otherwise—to take reasonable steps to destroy the images or report the matter to law enforcement.

171.   Ms. Doe suffered personal injury as a result of Defendant's violation of 18 U.S.C. §§ 2251, 2252, and 2252A.

172.   Ms. Doe seeks all available relief, including:

      a.   actual damages she has sustained or liquidated damages;

      b.   the cost of this action, including reasonable attorneys' fees and other litigation costs;

      c.   punitive damages; and

      d.   other preliminary and equitable relief as the Court determines to be appropriate.

## **PRAYER FOR RELIEF**

Plaintiff prays for judgment in favor of Plaintiff and against Defendant, awarding Plaintiff her compensatory, liquidated, and punitive damages in an amount to be established at trial; equitable relief enjoining Defendant from any possession

or action with respect to child pornographic images of Ms. Doe; reasonable attorneys' fees and costs; legal interest; and such other relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff respectfully demands a trial by jury.

Date: March 2, 2021

Respectfully submitted,

| | |
|---|---|
| Monica H. Beck | /s/ Courtney Abrams |
| Chloe M. Neely | Courtney Abrams (No. 265742) |
| Members of The Fierberg National | Courtney Abrams, PC |
| Law Group, PLLC | 2711 Sepulveda Blvd., No. 625 |
| *Pro hac vice applications to be filed* | Manhattan Beach, CA 90266 |
| 161 East Front Street, Suite 200 | (310) 601-4448 (T) |
| Traverse City, MI 49684 | courtney@courtneyabramslaw.com |
| (231) 933-0180 (T) | *Local Counsel* |
| (231) 252-8100 (F) | *Attorney for Plaintiff Jane Doe* |
| mbeck@tfnlgroup.com | |
| cneely@tfnlgroup.com | |
| *Attorneys for Plaintiff Jane Doe* | |

COMPLAINT